IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT DAVIS, | ) | Case No. 5:24-CV-01564-JRA |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| DOUGLAS FENDER, Warden, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.   INTRODUCTION

Petitioner, Robert Davis ("Mr. Davis"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Davis is serving a sentence of 15 years to life after being convicted of felony murder and aggravated robbery.

Mr. Davis asserts three grounds for relief. Respondent, Warden Douglas Fender ("Warden"), filed an answer/return of writ on January 16, 2025. (ECF No. 8). Mr. Davis filed a traverse on March 24, 2025. (ECF No. 12). This matter was referred to me on September 16, 2024, under Local Rule 72.2 to prepare a report and recommendation on Mr. Davis' petition. (*See* ECF non-document entry dated September 16, 2024). For the reasons set forth below, I recommend that Mr. Davis' petition be DISMISSED. I further recommend that this Court not grant Mr. Davis a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Ninth Appellate District summarized the facts as follows:

> {¶3} On January 10, 2012, Davis, DeMarcus Williams ("Williams"), and Rasheem Carr ("Carr"), also known as "Mal," decided to rob Marcus Minter ("Minter") because Williams knew Minter always had money on him. According to Williams, the plan was that he and Carr would rob Minter, and then Davis would drive them to Williams' aunt's ("Aunt's") house. Also, Carr was supposed to park his mother's Buick Rendezvous in an alley behind Davis' house and give Davis the keys.

> {¶4} Down the street from Davis' house, Minter was sitting in Philip Anderson's ("Anderson") car with Alexander Wells ("Wells"). Williams and Carr approached the car with their guns drawn. According to Williams, as he was robbing Minter, Carr fatally shot Anderson. Williams and Minter ran. Davis was waiting for Williams in the Buick Rendezvous and drove him to Aunt's house. Davis then went back and picked up Carr. When they returned to Aunt's house, the three of them divided up the proceeds from the robbery.

> {¶5} Williams initially refused to talk when questioned by the police, denying that he had any knowledge or involvement in the incident. The second time Williams spoke with the police, he told them that he and Davis robbed Minter, but Davis was the one who shot Anderson. He implicated Carr as the getaway driver.

> {¶6} A short time later, while Williams was still being held in jail, his girlfriend called the Akron Police Department, stating that Williams urgently wished to speak with a detective on his case. Sgt. Dave Garro then met with Williams at the Summit County Jail. Williams told Sgt. Garro that in his prior interview he lied about Davis being the shooter, and that in fact, Carr was the shooter and Davis simply drove the getaway car. Williams said that he previously implicated Davis as the shooter because at the time, he erroneously believed Davis had turned him in. Once Williams realized that Davis' statement to the police had not implicated him, he wished to correct his statement.

> (ECF No. 8-1, Exhibit 19); *State v. Davis*, No. 30231, 214 N.E. 3d 1148, 1150-51, 2023-Ohio-1657 (9th Dist. May 17, 2023).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On February 14, 2012, Mr. Davis was indicted in the Summit County Court of

Common Pleas on one count of felony murder; one count of complicity to commit murder; one count of aggravated robbery; and one count of complicity to commit aggravated robbery. (ECF No. 8-1, Exhibit 1); *State v. Davis*, No. 26660, 2013 WL 6212230, 2013-Ohio-5226, ¶ 4) (9th Dist. Nov. 27, 2013).[1] Each count also carried a firearm specification. *Id*.

On April 2, 2012 and April 18, 2012, the state charged Mr. Davis with additional counts of felony murder, aggravated robbery, and having weapons while under disability. (ECF No. 8-1, Exhibit 1). Before trial, the trial court dismissed one murder charge, the complicity to commit murder count, and the complicity to commit aggravated murder count at the State's request. *Id*.

On August 20, 2012, the jury convicted Mr. Davis of felony murder and aggravated robbery, but the jury acquitted him of having weapons while under disability and the firearm specifications. *Id*. On August 31, 2012, the trial court sentenced Mr. Davis to an aggregate term of fifteen years to life. *Id*.

**B. <u>Direct Appeal</u>**

On October 15, 2012, Mr. Davis, through counsel, timely filed a notice of appeal to the Ninth Appellate District. *Id*. In his appellate brief, Mr. Davis raised the following assignments of error:

> 1. Although the jury found the Appellant guilty of aggravated robbery per 2903.11(A)(1), because said jury found that the Appellant did not have a firearm on or about his person or under his control, and did not either display, brandish, indicate that he possess[ed] a firearm or did not use it to facilitate said aggravated robbery, the finding of guilt was erronious [sic] due to an inconsistent verdict form. Because no objection was made by trial counsel and the failure to

---

[1] The state court record that the Warden filed in this case does not include any records from Mr. Davis' original trial proceedings or his direct appeal from his conviction. The procedural history regarding those proceedings is taken from the Ninth Appellate District's opinion affirming Mr. Davis' conviction and from the magistrate judge's report and recommendation regarding Mr. Davis' first federal habeas petition.

recognize and to object to inconsistent verdict form and convictions affects the Appellant's substantial rights, plain error should apply.

2. Because the Appellant was improperly found guilty of aggravated robbery as indicated in assignment of error two, this court must too reverse his conviction of felony murder because in order for the Appellant to be found guilty of felony murder, his conviction of aggravated robbery, the underlying predicate offense, must stand.

3. The court erred by denying the Appellant's motion for Rule 29 motion for acquittal and the verdict was against the manifest weight of the evidence.

4. The Appellant's trial counsel was ineffective because said counsel did not file a motion to sever the Appellant's trial from the co-defendant's trial per Crim[inal] [Rule] 14, and failing to offer a continuing motion for severance due to the prejudice that it invoked up [sic] the Appellant who should have had his case tried separately from the co-defendant, said error is plain error and requires reversal.

*Id*.

On November 27, 2013, the Ninth Appellate District affirmed Mr. Davis' conviction.

*Id*.; *State v. Davis*, No. 26660, 2013 WL 6212230, 2013-Ohio-5226 (9th Dist. Nov. 27, 2013).

Mr. Davis appealed to the Ohio Supreme Court. (ECF No. 8-1). In his memorandum in

support of jurisdiction, Mr. Davis raised the following propositions of law:

1. The Ninth District erred in denying the Appellant's first assignment of error which argued that the jury's verdict of guilty of aggravated robbery per 2903.11(A)(1), was improper because said jury found that the Appellant did not have a firearm on or about his person or under his control, and did not either display, brandish, indicate that he possess[ed] a firearm or did not use it to facilitate said aggravated robbery, wherefore, the finding of guilty was erronious [sic] due to an inconsistent verdict form.

2. Because the Appellant was improperly found guilty of aggravated robbery per the arguments in proposition of law one, his conviction for felony murder must also be vacated because the predicate offense of aggravated robbery, if reversed, would no longer qualify as the necessary predicate offense to the felony murder conviction.

3. The Ninth District Court of Appeals erred in affirming the trial court's denial of the Appellant's motion for Rule 29 motion for acquittal; furthermore, the Appellant's conviction is against the manifest weight of the evidence.

4

*Id*. On March 26, 2014, the Ohio Supreme Court declined to accept jurisdiction of Mr. Davis' appeal. *Id*.

**C.  First Federal Habeas Petition**

On March 25, 2015, Mr. Davis, through counsel, filed a petition for a writ of habeas corpus in the Northern District of Ohio pursuant to 28 U.S.C. § 2254, in a case captioned *Davis v. Morgan*, No. 5:15-cv-00586-PAG. In his petition, Mr. Davis raised three grounds for relief:

1. Jury's verdict of guilty of Aggravated Robbery was improper because same jury found that Petitioner had no firearm, nor did he have firearm under his control, to facilitate an Agg[ravated] Robbery.

2. Because Petitioner was improperly found guilty of Aggravated Robbery, his conviction of Felony Murder was improper because the predicate offense failed to exist.

3. Ohio Courts erred in affirming the Petitioner's convictions and denying his Motion for Criminal Rule 29 acquittal. Furthermore, Petitioner's convictions were against the manifest weight of the evidence.

*Id*., ECF No. 1.

On May 26, 2016, the Magistrate Judge assigned to the case issued a report and recommendation, recommending that the court deny Mr. Davis' petition. (ECF No. 8-1, Exhibit 1). On July 19, 2016, the District Judge adopted the report and recommendation. (ECF No. 8-1, Exhibit 2).

**D.  Motion for New Trial**

On January 16, 2019, Mr. Davis, through counsel, filed a motion in the trial court for leave to file a motion for a new trial pursuant to Ohio Rule of Criminal Procedure 33(B). (ECF No. 8-1, Exhibit 3). In his motion, Mr. Davis argued that he was entitled to a new trial because DeMarcus Williams, his alleged co-conspirator and the only witness directly implicating Mr. Davis at trial, had recanted his trial testimony and now swore under oath that

5

Mr. Davis was not involved in the robbery or the murder. *Id*.

On March 5, 2019, the trial court granted Mr. Davis' motion for leave to file a motion for a new trial. (ECF No. 8-1, Exhibit 6). Mr. Davis filed his motion on March 12, 2019, and filed an amended motion on March 15, 2019. (ECF No. 8-1, Exhibits 5, 7). The trial court held an evidentiary hearing at which Mr. Williams testified, after which the parties submitted post-hearing briefs. (ECF No. 8-1, Exhibits 11-13; ECF No. 8-14; ECF No. 8-15).

On February 11, 2022, the trial court denied Mr. Davis' motion for a new trial. (ECF No. 8-1, Exhibit 15). On the same day, Mr. Davis, through counsel, filed a notice of appeal to the Ninth Appellate District. (ECF No. 8-1, Exhibit 16). In his appellate brief, Mr. Davis raised the following assignments of error:[2]

1. The Trail Court Erred When it Denied a Appellant a New Trial.

2. Where the Trial Judge Determines the Recanting Witness is not Credible, a New Trial Must be Granted Where There is no Independent Evidence of Appellant's Guilt.

3. The Trial Courts Credibility Assesment is so Arbitrary that it Constitutes and Abuse of Discretion.

4. It is so Unconscionable to Support a Conviction with the Solely the Testimony of a Witness the State and Court Find to Lack Credibility, that it is an Abuse of Discretion.

5. The Trial Court's Judgment is Arbitrary Where a Prior Appropriate Application of Calhoun's Factors to the Same Claims Produced a Different Result.

6. The Trial Court Abused its Discretion When it Made an Unreasonable Determination of Fact not Supported by the Record.

(ECF No. 8-1, Exhibit 17).

On May 17, 2023, the Ninth Appellate District affirmed. (ECF No. 8-1, Exhibit 19). On May 26, 2023, Mr. Davis filed a motion in the Ninth Appellate District to certify a conflict,

---

[2] Mr. Davis' assignments of error are presented verbatim.

arguing that the Ninth Appellate District's decision conflicted with a decision from another appellate district regarding the appropriate standard for evaluating affidavits submitted in connection with a motion for a new trial. (ECF No. 8-1, Exhibit 20). On July 17, 2023, the Ninth Appellate District denied Mr. Davis' motion to certify a conflict. (ECF No. 8-1, Exhibit 22).

On July 3, 2023, Mr. Davis, through counsel, filed a notice of appeal to the Ohio Supreme Court from the Ninth Appellate District's decision affirming the trial court. (ECF No. 8-1, Exhibit 23). In his memorandum in support of jurisdiction, Mr. Davis raised the following propositions of law:

1. A trial court errors [*sic*] where it denies a motion for a new trial based upon application of an incorrect legal standard.

2. A new trial must be granted where there is no independent evidence of appellant's guilt and where the trial judge determined that the recanting witness is not credible.

3. A trial court abuses its discretion where its credibility assessment is arbitrary.

4. It is so unconscionable to support a conviction with solely the testimony of one witness that the State and the court found to lack credibility, that it is an abuse of discretion.

5. A trial court's judgment is arbitrary where a prior appropriate application of Calhoun's factors to the same claims produced a different result.

6. A trial court abuses its discretion when it makes an unreasonable determination of fact not supported by the record.

(ECF No. 8-1, Exhibit 24). On September 12, 2023, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 8-1, Exhibit 26).

**E.  Second Federal Habeas Action**

On September 12, 2024, Mr. Davis, through counsel, filed this habeas petition under 28 U.S.C. § 2254. (ECF No. 1). Mr. Davis's habeas petition raises three grounds for relief:

1. A new trial must be granted where there is no independent evidence of appellant's guilt and where the trial judge determined that the recanting witness is not credible. When the State Court refused to grant a new trial, based on material credible information which undermines the entire case against Petitioner, the outcome was a fundamental miscarriage of justice, which resulted from an unreasonable application of firmly established United States Supreme Court precedent, and was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

2. A trial court abuses its discretion where its credibility assessment is arbitrary. When the State Court arbitrarily assessed the materiality and credibility of Williams' recantation, the outcome was a fundamental miscarriage of justice, which resulted from an unreasonable application of firmly established United States Supreme Court precedent, and was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

3. A trial court abuses its discretion when it makes an unreasonable determination of fact not supported by the record. When the State Court based its refusal to grant a new trial on information not supported by the record, the outcome was a fundamental miscarriage of justice, which resulted from an unreasonable application of firmly established United States Supreme Court precedent, and was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

(ECF No. 1-3). The Warden filed an answer/return of writ on January 16, 2025. (ECF No. 8). Mr. Davis filed a traverse on March 24, 2025. (ECF No. 12).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Summit County Court of Common Pleas sentenced Mr. Davis, and the Court takes judicial

notice that Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Davis' § 2254 petition.

**B.  Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

9

A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C. Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the

10

ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's

decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Davis asserts three grounds for relief. The Warden argues that Mr. Davis procedurally defaulted on all three grounds because he failed to fairly present them to the

13

Ohio courts. The Warden also argues that none of Mr. Davis' claims is cognizable in a habeas proceeding. I agree with the Warden on both arguments.

### A.  Procedural Default[3]

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not "fairly presented" to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). "To determine whether a petitioner has fairly presented a claim in state court, [a court] ask[s] whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (citing *McMeans*, 228 F.3d at 681).

Mr. Davis raised all three grounds for relief in his appeals to the Ninth Appellate District and the Ohio Supreme Court from the trial court's denial of his motion for a new trial. (ECF No. 8-1, Exhibits 17, 24). However, in making his argument, Mr. Davis did not cite to any federal constitutional provisions or rely on state or federal cases applying a federal constitutional analysis. Instead, Mr. Davis argued that the trial court misapplied the standards

---

[3] It is not entirely clear that Mr. Davis' habeas petition is timely. "In the context of recanting witness affidavits, federal courts have held that the limitations period for discovering the factual predicate begins 'when the petitioner knew or could have discovered that the witness was willing to recant his or her testimony, not when the affidavit is executed.'" *Linder v. Haviland*, No. 1:14CV1489, 2016 WL 11737762, at *6 (N.D. Ohio May 31, 2016) (quoting *Bates v. Warren*, No. 05-CV-72772-DT, 2010 WL 1286206, at *8 (E.D. Mich. Mar. 30, 2010)), *report and recommendation adopted*, 2016 WL 7664734 (N.D. Ohio Dec. 15, 2016). Here, Mr. Davis began corresponding with Mr. Williams in October 2015 but did not file his motion for leave to file a motion for a new trial until January 1, 2019. Arguably, Mr. Davis should have known well before January 1, 2019 that Mr. Williams was willing to recant his testimony. However, the Warden has not made a statute of limitations argument, and I decline to raise the issue *sua sponte*. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) ("district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition").

governing Crim.R. 33 motions under Ohio law and abused its discretion in finding that Mr. Williams' recantation was not credible.

It is true that Mr. Davis made a handful of general references to constitutional standards in his briefs to the Ninth Appellate District and the Ohio Supreme Court. In his second assignment of error to the Ninth Appellate District, for example, Mr. Davis argued that a defendant's "constitutional rights are violated" where a credibility determination is not supported by the evidence in light of a witness's recantation. (ECF No. 8-1, Exhibit 17, PageID # 327). In his fourth assignment of error, Mr. Davis likewise argued that his conviction was "unjust and unconstitutional" because it was supported only by the testimony of a witness whom the trial court later determined was not credible. *Id*. at PageID # 329.

However, "[w]hile a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)). Mr. Davis thus did not fairly present his claims to either the Ninth Appellate District or the Ohio Supreme Court.[4] And, because the time for him to do so has expired, Mr. Davis' failure to fairly present his claims means that he has procedurally defaulted on them. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

Mr. Davis' procedural default can be excused if he demonstrates either cause and

---

[4] Mr. Davis did cite to the Fifth and Sixth Amendments in connection with his argument that the trial court erred in relying on the fact that Mr. Williams consulted with attorneys from the Ohio Innocence Project before agreeing to recant his testimony. (ECF No. 8-1, Exhibit 17, PageID # 333). Even accepting that argument as true, it is not an assertion that *Mr. Davis'* Fifth or Sixth Amendment rights were violated.

prejudice or that he is actually innocent of the offenses for which he was convicted. *Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 324. Mr. Davis argues only that his procedural default should be excused on actual innocence grounds, so I will confine my review to that issue and will not consider whether he has demonstrated cause and prejudice to excuse his default.

As noted above, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). That standard "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Schlup*, 513 U.S. at 327 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

In *House*, the Court stated that "several features" of *Schlup* "bear emphasis." 547 U.S. at 537. "First, although '[t]o be credible' a gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial,' the habeas court's analysis is not limited to such evidence." *Id*. (quoting *Schlup*, 513 U.S. at 324). Second, the *Schlup* standard is "demanding" and permits review only in an "extraordinary" case. *Id*. (quoting *Schlup*, 547 U.S. at 327). However, *Schlup* "does not require absolute certainty about the petitioner's guilt or innocence," but rather only requires a petitioner to demonstrate "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *Id*.; *see also Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (stating that the "threshold inquiry is whether 'new facts raise[] sufficient doubt about [the

16

petitioner's] guilt to undermine confidence in the result of the trial") (quoting *Schlup*, 513 U.S. at 317).

In addition, "*Schlup* makes plain that the habeas court must consider 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327-28) (cleaned up). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id*. (quoting *Schlup*, 513 U.S. at 329).

Mr. Davis bases his actual innocence claim on the recantation of Mr. Williams, who provided the only direct testimony against Mr. Davis at trial. Mr. Williams began corresponding with Mr. Davis in October 2015, and he sent Mr. Davis a number of letters over the next several years, including letters in which he stated that Mr. Davis was not involved in the incident. (ECF No. 8-1, Exhibit 3, PageID # 120-37). On October 20, 2019, Mr. Williams executed a sworn affidavit, stating as follows:

> I, DeMarcus Williams swear that I voluntarily proved this statement to Tom Pavlish I had known Robert Davis for approximately 8 years I did not testify truthfully at Robert's trail when I stated that he was involved in the robbery. In fact I asked him if he wanted to go with me to Rob Minter. He said I'm kool or something like that. It was obvious to me that he wanted no parts of the robbery. He said something about being kool with Minter or his people. I had previously told the prosecutor this. I had met with the prosecution so many times that they made me believe he was a part of the crime when he wasn't.

*Id*. at PageID # 119. Mr. Williams repeated that testimony under oath at the evidentiary hearing on Mr. Davis' motion for a new trial. (ECF No. 8-14, PageID # 1858-75).

The Sixth Circuit has recognized that there is "a circuit split about whether the 'new' evidence required under *Schlup* includes only newly discovered evidence that was not available at the time of trial, or broadly encompasses all evidence that was not presented to

17

the fact-finder during trial, *i.e.*, newly presented evidence." *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012). "While the Sixth Circuit has not conclusively answered this question, several decisions suggest 'that this Circuit considers 'newly presented' evidence sufficient." *Everson v. Bracy*, No. 4:17 CV 973, 2021 WL 9830398, at *4 (N.D. Ohio Mar. 5, 2021) (quoting *Cleveland*, 693 F.3d at 633). I will therefore assume that Mr. Williams' affidavit constitutes new evidence under *Schlup*. After careful consideration, however, I conclude that Mr. Davis fails to demonstrate that Mr. Williams' affidavit is reliable and makes it more likely than not that no reasonable juror would convict Mr. Davis.

Mr. Davis argues that Mr. Williams' recantation satisfies *Schlup* because Mr. Williams provided the only direct evidence against Mr. Davis at trial and because Mr. Williams has not testified under oath that his trial testimony was false. As the Sixth Circuit has held, however, "affidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) (quotations omitted); *see also Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006) (holding that affidavits of recanting inmates "are of little value"); *Welsh v. Lafler*, 444 F. App'x 844, 850 (6th Cir. 2011) (holding that a sworn recantation "must be viewed with caution").

Several factors reinforce that skepticism here. First, Mr. Williams delayed in recanting his testimony. He testified at Mr. Davis' trial in August 2012. However, he did not write his first letter to Mr. Davis until October 2015—more than three years later—and did not sign a sworn statement recanting his trial testimony until September 2018, six years after the trial. In addition, the trial court found that Mr. Williams recanted his testimony only after Mr. Davis himself reached out to Mr. Williams and asked him to do so. (ECF No. 8-1, Exhibit 15). Mr. Davis has not shown that the trial court's factual findings were unreasonable, and I must

18

therefore accept them. *See* 28 U.S.C. § 2254(e)(1); *Moore*, 708 F.3d at 775; *Noling v. Bradshaw*, No. 5:04 CV 1232, 2008 WL 320531, at *22 (N.D. Ohio Jan. 31, 2008).

Courts in this circuit have consistently held that a witness's recantation is less credible where it occurs years after the fact and at the petitioner's urging. *See Hubbard v. Rewerts*, 98 F.4th 736, 749 (6th Cir. 2024) ("Unexplained delay between long past events and a witness's decision to testify to those events also casts a pall of unreliability over the testimony.") (citing *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013)); *Everson*, 2021 WL 9830398 at *4 (N.D. Ohio Mar. 5, 2021) ("The fact that [affiants] wrote their affidavits at [petitioner's] behest—after years of delay and repeated requests from [petitioner]—further undermines their reliability."); *Gray v. Hudson*, No. 1:06CV1308, 2008 WL 1995362, at *7 (N.D. Ohio May 5, 2008) ("the inherent suspiciousness of the recanting affidavits, coupled with their late filing more than three years after conviction, and the lack of explanation as to why they were filed so late, compels the Court to find that Petitioner has not demonstrated new reliable evidence of constitutional error").

In addition, as Mr. Davis himself notes, Mr. Williams' recantation is not the first time that he has changed his story. Mr. Williams initially denied any involvement in the incident. (ECF No. 8-1, Exhibit 19, ¶ 5). He subsequently changed his story, telling police that Mr. Davis was the actual shooter who committed the murder. *Id*. Shortly thereafter, Mr. Williams contacted the police, informing them that he had identified Mr. Davis as the killer only because he erroneously believed that Mr. Davis had implicated Mr. Williams in the incident. *Id*. at ¶ 6. Mr. Williams then said that Mr. Davis was the getaway driver and that a third individual, Mr. Carr, had committed the murder. *Id*. Mr. Williams testified to that version of events at Mr. Davis' trial.

Mr. Williams' recantation—in which he asserts that Mr. Davis was not involved in the robbery and murder and instead expressly stated that he did not want to participate—is thus at least the fourth different version of events that Mr. Williams has told. "A vacillating witness who changes his story multiple times is often presumed to be unreliable." *Hubbard*, 98 F.4th at 749; *see also Davis v. Bradshaw*, 900 F.3d 315, 330 (6th Cir. 2018) (noting that witness's "recantation amounts to another change in his story" which "alone could make it more difficult for a reasonable juror to find it reliable"). "In such circumstances, a reasonable juror would likely need 'corroborating evidence' to discern which version of the witness's story is true." *Hubbard*, 98 F.4th at 749 (quoting *Davis*, 900 F.3d at 330). However, Mr. Williams' recantation "has not been corroborated with other evidence of innocence." *Welsh*, 444 F. App'x at 850.

Finally, the trial court found that Mr. Williams' testimony at the hearing on Mr. Davis' motion for a new trial was confusing and internally inconsistent, in contrast with his trial testimony, which was consistent and straightforward in describing Mr. Davis' involvement as the getaway driver. (ECF No. 8-1, Exhibit 15). In particular, the trial court found that Mr. Williams current version of events created logical difficulties because Mr. Williams testified both that Mr. Carr was the getaway driver ,and that Mr. Carr and Mr. Williams ran in different directions following the shooting. *Id*. at PageID # 277, 298. The trial court found that Mr. Williams then recited "a completely different version of events than he previously testified to, regarding who drove the getaway car, where and when it was parked in the alley, whether it was occupied and running or unoccupied and not running, and when he (Williams) got into it." *Id*. at PageID # 298.

My independent review of the hearing transcript confirms the trial court's findings.

The internal inconsistencies in Mr. Williams' recantation provide another basis to discount it. *See Welsh*, 444 F. App'x at 850 (holding that affidavit recanting trial testimony was "troubling" and insufficient to meet petitioner's burden under *Schlup* because it contained statements that were inconsistent with petitioner's own trial testimony).

 In sum, while Mr. Williams' recantation likely constitutes new evidence for purposes of *Schlup*, Mr. Davis has not shown that Mr. Williams' recantation is sufficiently reliable or that no reasonable juror could have convicted Mr. Davis despite the recantation. Rather, a reasonable juror could choose to credit Mr. Williams' initial trial testimony implicating Mr. Davis in the incident over his later, contradictory testimony absolving him. That is particularly true given Mr. Williams' shifting stories, the delay in his recantation, and the fact that the recantation appears to have come at Mr. Davis' urging and after years of correspondence.

I do not intend to minimize the potential impact of Mr. Williams' recantation. As Mr. Davis argues, Mr. Williams was the only witness who directly connected him to the robbery and murder. If a juror credited Mr. Williams' recantation, it would unquestionably raise serious doubts in the juror's mind regarding Mr. Davis' guilt. However, on habeas review, that is not the relevant standard. Instead, Mr. Davis must show that it is more likely that not that *no* reasonable juror would have convicted him.  *Schlup*, 513 U.S. at 327. Mr. Williams falls short of satisfying that heavy burden, and thus has not established grounds to excuse his procedural default. Accordingly, I recommend that the Court dismiss his claims in their entirety as procedurally defaulted.

### B.  Cognizability

The Warden alternatively argues that Mr. Davis' petition should be dismissed in its entirety because none of his grounds for relief is cognizable in a federal habeas proceeding. I

agree, and alternatively recommend that the Court dismiss Mr. Davis' petition on cognizability grounds.

As an initial matter, while Mr. Davis asserts that he is innocent of the murders, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("In the wake of *Schlup*, we have repeatedly indicated that [free-standing actual innocence] claims are not cognizable on habeas"). Mr. Davis' argument that he is actually innocent of the crimes thus does not provide an independent basis for habeas belief. I will instead analyze the three specific claims that he has asserted to determine whether any of them is cognizable.

In all three grounds for relief, Mr. Davis asserts that the trial court erred in denying his motion for a new trial. However, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress*, 484 F.3d at 853 (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986)). "[C]laims challenging state collateral post-conviction proceedings 'cannot be brought under the federal habeas corpus provision . . . because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and . . . the traditional function of the writ is to secure release from illegal custody." *Id*. (quoting *Kirby*, 794 F.2d at 246) (cleaned up). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because [the habeas court] would not be reviewing any matter directly pertaining to his detention.'" *Id*. (quoting *Kirby*, 794 F.2d at 247); *see also*

22

*Mock v. Bracy*, No. 1:22-cv-00937-PAB, 2023 WL 11807558, at \*14 (N.D. Ohio May 19, 2023) (holding that challenge to state court's denial of motion for new trial was not cognizable under *Cress* and *Kirby* because it was a challenge to a state collateral post-conviction proceeding), *report and recommendation adopted*, 2024 WL 2347279 (N.D. Ohio May 22, 2024). Because each of Mr. Davis' grounds for relief relates to state post-conviction proceedings, they are not cognizable in a federal habeas petition.

Even if Mr. Davis were not alleging errors in state post-conviction proceedings, his claim would still not be cognizable. Where a petitioner alleges that the state courts improperly denied his motion for a new trial, a federal habeas court can review the denial "only for constitutional error." *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009). "To establish a constitutional due process claim, [a petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Id*. (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)).

While Mr. Davis argues that the trial court erred in several respects when denying his motion for a new trial, he has not established that the state court's ruling was so egregious that it violated his right to a fundamentally fair trial. Accordingly, I therefore alternatively recommend that the Court dismiss Mr. Davis' petition in its entirety because his grounds for relief are not cognizable.

# VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

## A.  <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue .

. . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B. <u>Analysis</u>**

Mr. Davis has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions

debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS Mr. Davis'

petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court

not grant him a certificate of appealability.

Dated:  June 5, 2025

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within  the  specified  time  may  result  in  the  forfeiture or

waiver of the right to raise the issue on appeal either to the district judge or in a subsequent

appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).